Spring Term
1839.

*Case & Debt.* ## The Covington Ferry Company *vs.* Moore.

### *Two Cases.*

[Mr. Owsley for appellants : no appearance for appellee.]

FROM THE CIRCUIT COURT FOR CAMPBELL COUNTY.

*May 9.*      Chief Justice ROBERTSON delivered the Opinion of the Court.

An act of 1820 imposes a penalty of $200 upon any *ferryman* or other person who shall take a Ken. slave across the Ohio, into another state, without the owner's authority ; and, if the ferryman is a slave, the owner or keeper of the ferry is liable for the penalty.

An act of 1831 prohibits the taking of any slave or slaves from this State, across the Ohio to the opposite shore, by the owner or keeper of a ferry, or by any other person, without the owner's consent; and for a violation of this act, the offender is liable for the value of the slave or slaves, and to a penalty of $200; and if he be the owner or keeper of the ferry, he incurs a forfeiture of his ferry privileges, also. The terms 'keeper of a ferry,' as used in these acts, designate, not the acting ferryman, but the grantee or lessee or other person having a beneficial interest in, or control over,

A slave, named *Preston,* who had been in the habit of passing from *Covington* to *Cincinnati,* on the business of his master, (a tavern keeper of *Covington,*) having, on one Sabbath evening, passed on the ferry boat of the " *Covington Ferry Company,*" and escaped to *Canada*— Zedekiah Moore, the master, sued the company, in two actions, and recovered a judgment for eight hundred and ninety one dollars—the assessed value of the slave, and also a judgment for two hundred dollars, as a penalty under a statute of 1831.

The city of *Covington* was the grantee of the ferry franchise; " the Covington Ferry Company" was the lessee only, and the boat was under the control and management of agents employed by the company. It does not appear that any member of the company was either present when the slave passed to *Cincinnati,* or had any personal knowledge of his so passing. And it does appear that, the company had instructed its managers never to permit any slave to pass on the boat to the Ohio shore, without the owner's consent.

The only question we shall now consider is whether, upon these facts, the company is liable to Moore, under the statute of 1831. And we think it is not so liable.

An act of 1820 denounces a penalty of two hundred dollars against "any *ferry man* or other person who " shall carry or put over the Ohio river into another " State," any slave of a citizen of Kentucky, without the owner's authority; and also provides that, " where " any *slave* shall be so taken over said river, by a *ferry-* " *man* who shall be *a slave,* the *owner* or *keeper* of such " ferry shall be liable for the penalty.

Spring Term
1839.

The Covington
Ferry Co.
vs
Moore.

The first section of the act of 1831 enacts that, " no " *owner* or *keeper* of a ferry across the Ohio river, within " this Commonwealth, shall set over or convey any slave " or slaves from this Commonwealth, or any of the " islands in said river, to the opposite shore thereof," without the consent of the owner of the slave or slaves.

The second section contains the same prohibition against any other person not the " *owner or keeper*" of a ferry.

The third section provides that, " if any owner or " owners of any ferry, as aforesaid, shall offend against " and violate the provisions of this act, he, she or they " shall forfeit his, her, or their said ferry, and his, her, or " their right of ferry shall cease and be void &c."—and also denounces, as a further penalty, liability for the value of the slave or slaves, and two hundred dollars, in addition thereto.

And the fifth section denounces the same penalty, except the forfeiture, against any other " person or persons not being the owner or owners, keeper or keepers" of a ferry.

The act of 1820 clearly implies a definition of the " keeper" of a ferry, and shows that the Legislature meant, by that term, not the " *ferryman,*" but a grantee, lessee, or other person having a beneficial interest in and control over the ferry.

The act of 1820 shows, also, that the penalty was denounced for the *personal* act of the party subjected to it, unless a slave employed by the owner or keeper of a ferry, should be the actual wrongdoer; and then the employer is liable for the penalty; but the owner or keeper is not, in any other case, subjected to the penalty for the act of his ferryman, or other agent, done *without his sanction.* The person actually guilty is, with these exceptions, alone liable for the penalty denounced for doing the prohibited act.

And this obvious interpretation of the act of 1820, harmonizes with all analogy; for it is the policy of *penal* enactments to punish the guilty only.

Now the only object of the act of 1831 was to increase the penalty denounced by the act of 1820, and

the ferry. And the penalties denounced by both statutes, are upon him or those by whose individual acts they are violated—and up on the owner or keeper of a ferry whose ferryman is a slave. But he is not responsible for his free ferryman who violates the law without his consent.

The city of Covington being the grantee, and the Covington Ferry Co. the lessees, of a ferry across the Ohio—a slave passed over in a boat managed by a ferryman for the Co. and made his escape: as no member of the Co. was present at the time, and the permitting of the slave to pass was contrary to their general orders, the Company is not liable for the value of the slave, nor for the penalty.

Spring Term
1839.

*The Covington
Ferry Co.*
vs
*Moore.*

thereby afford to the owners of slaves in this Common-
wealth greater security.  And it is evident that " the
keeper of a ferry" means, in the act of 1831, precisely
what it meant in the act of 1820; and that, under each
of the acts, precisely alike in this respect, the owner or
keeper of a ferry is not subject to the penalty for the un-
sanctioned act of his responsible " ferryman."   If " the
owner or keeper" shall violate the act of 1831, he is lia-
ble for the value of the slave or slaves, and a penalty of
two hundred dollars, and may forfeit also his ferry privi-
leges. ʼ If *any other person* shall violate the act, he is liable
for the value of the slave or slaves, and the same penal-
ty of two hundred dollars.   For the act of a ferryman
or other  person not the " keeper," the penalty is de-
nounced only against the person doing the act; and the
more severe penalty against the owner or keeper, is in-
curred only by his own voluntary act.

This seems very plain to us.   It would certainly be
unusually and unnecessarily harsh, to subject to forfeit-
ure a valuable ferry franchise, only because a ferryman,
responsible for his own acts, had violated the statute
without the owner's consent, and even against his com-
mand.

We are, therefore, clearly of the opinion that, with-
out any proof tending to implicate " the Covington Fer-
ry Company," as keeper of the ferry, in the act of its
" ferryman," Moore had no legal right to recover either
of the judgments we are now revising.

And therefore, as the instructions given by the Circuit
Judge to the jury, on the trial, assumed that the compa-
ny, as owner or keeper, is liable, under the act of 1831,
for the acts of its ferrymen, the judgments must both
be reversed, and the causes remanded for new trials.