CASE.                         **Johnson & Co. vs Bryan,**

*Case 92.*                    APPEAL FROM THE BOURBON CIRCUIT.

*Stages owners and proprietors of.  Masters.  Principals and agents.*

*May 17.*    JUDGE EWING delivered the Opinion of the Court.

The case stated.    THIS is an action on the case, brought by Bryan against Johnson & Co. as the owners of the line of mail stages from Lexington to Maysville, for receiving and carrying on their coaches, from Paris to Maysville, his slave Peter, who escaped to Ohio and was lost to his owner.

The action was brought under the statute passed the 8th February, 1838, (*Acts,* 1837–8, 155,) and a verdict obtained and judgment rendered for Bryan, for the value of the slave and costs expended in efforts to recover him, from which the Company has appealed to this Court.

The following facts are deducible from the evidence given on the trial: that the slave was taken on the coach, as a passenger, in the suburbs of Paris, between the stage office at Paris and that at Millersburg, by the stage driver, in the absence of and without a written request from his owner, and was entered on the way-bill as a passenger to Maysville, by the son of the keeper of the Stage office at Millersburg, who attended to the business of the office in the absence of his father, and who was then absent, and sometimes attended to it when he was present, and was carried to Maysville; that the slave escaped to Ohio, and though pursued at much cost and trouble by the son of the owner, at his instance, and at the urgent solicitation of Johnson, one of the company, to spare no pains or costs in the pursuit, has never been recovered, but is lost to the owner; that it was the practice upon the line for the drivers to take in passengers at any point between two offices, who were entered at the first office arrived at, on the way-bill, and charged from the point at which they were taken in.

We are not prepared to concede that the owners of the line would not have been responsible at common law, upon the state of case disclosed, to the owner of the slave for the damage he has sustained.   The master or principal is liable for injuries occasioned by the *negligence* or *unskillfulness* of his servant, agent, or sub-agent, whilst in the *course* of his *employ* and in the *discharge* of his *business*, ''though the act may be oviously tortious:'' 1*st Chitty*, 92–3; 1*st Black. Com.* 431.

And the proprietors of stage coaches, though not made liable according to common law principles, as common carriers, especially as to passengers, or as carriers of persons, are bound to provide *skillful* and *trustworthy* drivers and other agents, and are responsible for their *unskillfulness, negligence,* or *unfaithfulness* in the discharge of the business of their employment: 2 *Kent's Com.* 601.   Nor can they excuse themselves from responsibility by proving on the trial, that they had commanded their drivers or agents to refrain from the alleged wrong.   If they could, they might always escape and still keep in their employ the most unskillful and faithless agents and sub-agents. Their duty is not only to look to the *ability* but also to the *disposition* of those employed to discharge the duties with which they are entrusted; and the public, who has no power to select or control those agents, have a right to look to the *employers* for the *competency, skill,* and *vigilance* of those employed.

It was the *business* of the driver, in the case before the Court, to *receive passengers* in the way between the stage offices, and was also the business of the agent and sub-agent at Millersburg to enter those on the way-bill who had been received.   This *taking* in passengers, by the driver and *entry* by the agent, at the office, was a *business* entrusted to each of those agents in the employ and by and for the *benefit* of the employers.   And if not specially entrusted to the young man who made the entry of the slave in question at the stage office, it was entrusted to his father with the implied power to entrust it to another who was competent and trustworthy, in his absence, and who must be regarded as a sub-agent.

JOHNSON & Co.
*vs*
BRYAN.

Masters or principals, by the *common law,* are liable for injuries occasioned by the negligence or unskillfulness of their agents or sub-agents whilst in their employ and in discharge of their business, though the act may be obviously tortious.

Proprietors of stage coaches are bound to provide skillful and trustworthy drivers & agents, and are responsible for their *unskillfulness, negligence,* or *unfaithfulness*

Johnson & Co.
vs
Bryan.

Drivers of stage
coaches and sub-
agents must so
conduct them-
selves in the dis-
charge of the du-
ties assigned to
them as not to
effect the rights
of others.

The statute of
Ky. (Sess. Acts,
1837-8, p. 155,)
gives an action
against the 'own-
ers and proprie-
tors of the stage
or other coach,
or rail road car,'
for such injuries
as here complain-
ed of.

They, in the discharge of this business, should have so conducted themselves as not to effect the rights of others. They should, therefore, in taking in the slave and making an entry of him on the way-bill, have made enquiry and ascertained whether he had authority from his master to take a passage, and in failing to do so, they were guilty of culpable *neglect* and disregard of the rights of the master, which we are inclined to believe, according to common law principles, would render their employers liable to the owner.

If this conclusion be correct, then the only object and effect of the statute as to the civil remedy afforded, was to *increase* and *fix* the *amount* of recovery.

But if it be conceded that an action would not lie at common law, we cannot doubt that it may be maintained under the statute.

The statute provides "that it shall be unlawful for the owners and proprietors of any mail stage or other coach, or railroad car, to suffer or permit any slave or slaves to go as passengers therein, without a written request of their owners, or in the company of their owners, under the penalty of one hundred dollars for each slave taken contrary hereto; and also being liable to the owners for the *full value* of all slaves which may *thereby* escape from their owners, with such additional *costs* and *damages* as the owners may incur in attempting to recover such slave."

The evil that existed and the remedy intended to be effected by the enactment is apparent. Slaves availed themselves of the facilities afforded by stage lines and steam cars to escape from their masters. The rapidity with which they were carried by those conveyances, as also the mode of travelling, enabled them to elude pursuit and detection. The evil was growing, as stage lines were increasing and improvements advancing. A remedy was attempted to be provided, commensurate with the growing evil, and adequate to the remuneration of the injured master.

If the statute is made to apply only when the stage owners are guilty of the wrong, as contended by the counsel, then will the statute have missed its aim and the evil still exist in its full vigor. For the denunciation is

only against the *owners* and *proprietors,* and not against any of their *agents.* And as it is known that stage owners and proprietors rarely ever drive their own coaches or keep their own stage offices, if a *personal participation* in the wrong could alone render them liable, the instance would be rare in which an action could be maintained or the indemnity contemplated be afforded to the master.

If it were not the object of the statute to render the "owners and proprietors" responsible for the acts of their agents, it is strange that the denunciation had not been directed against the *agents* as well as the proprietors, who were more frequently guilty of the wrong, and whose occupation enabled them to be guilty more frequently, and against whom the offence could be more easily proven.

If the agents escape, because the denunciation is not against them, and the owners, because having nothing to do with the reception of passengers, their personal participation or connivance in the wrong can never be made out, then is the statute a mere *brutem fulmen,* tantalizing the owners of slaves with the shadow of remedy, but affording none in fact.

If the statute, as to the penalty of one hundred dollars for the public wrong, should be construed strictly, and be made to apply only to a *personal* participation or *connivance* in the offence, as to the injury to the owners, it is *remedial* and should be so construed as to afford the *remedy* intended. We are therefore clearly of opinion that the company is guilty of *"suffering* and *permitting,"* where the act is done by *themselves or agents or subagents,* and are responsible at least for the civil injury.

The decision in the case of the *Covington Ferry Co.* vs *Moore, 8 Dana,* 158, was made on a statute whose language was different from the one on which this action is founded, and in the interpretation of which, by reason of the specification of different penalties against different individuals and for other reasons, the Court was brought to the conclusion they arrived at, and we still think correctly.

As the opinions of the Circuit Court, in giving, withholding, and modifying the instructions asked, were in perfect accordance with the views expressed in this opin-

JOHNSON & Co.
*vs*
BRYAN.

The owners and proprietors are guilty of 'suffering and permitting,' within the contemplation of the statute, when the act is done, or permitted, by themselves, their agents, or sub-agents, and are responsible.

ion, the judgment below is affirmed with costs and damages.

*Robinson* and *Johnson* for appellants: *Hanson* for appellee.